UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-6151-GW-PDx | Date | January 6, 2025 |
|---|---|---|---|
| Title | *Century Surety Company v. L for Lofts, LLC, et al.* | | |

Present: The Honorable  GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON CENTURY SURETY COMPANY'S MOTION FOR SUMMARY JUDGMENT [22]

Attached hereto is the Court's Final Ruling on Plaintiff's Motion [22]. The Court GRANTS Century's Motion for Summary Judgment. Within two business days of the date of this order, Century shall file a proposed final judgment consistent with the decision herein and the prior rulings of the Court.

:

Initials of Preparer    JG

<u>*Century Surety Company v. L For Lofts, LLC et al.*</u>; Case No. 2:23-cv-06151-GW-(PDx)
Final Ruling on Plaintiff's Motion for Summary Judgment

Before the Court is Plaintiff Century Surety Company's Motion for Summary Judgment ("Motion," Docket No. 22). The Court has considered the Motion, Defendants L For Lofts, LLC, Wilfred Yang, and Eduardo Ho's opposition ("Opp.," Docket No. 32), Plaintiff's reply ("Reply," Docket No. 37), the concomitantly filed declarations and record evidence, the oral argument presented at the September 30, 2024 hearing, and the parties' supplemental briefs (Docket Nos. 46, 48, 50, 51, 52, 53). For the reasons stated herein, the Court **GRANTS** the Motion.

I.     **Background**[1]

This case is an insurance coverage action that arises from a building fire in downtown Los Angeles. Plaintiff Century Surety Company ("Century") is an insurance company that insured Defendant L For Lofts, LLC ("L For Lofts") under a general commercial liability insurance policy from March 5, 2021 through March 5, 2022 (the "Policy"). SUF ¶¶ 3, 19. The Policy insured L For Loft's property located at 262 South Los Angeles Street (the "Property") in downtown Los Angeles, which was a corner building that fronted both Los Angeles Street and East 3rd Street. SUF ¶¶ 6-8. The Property was a mixed used, three-story building, with the first floor housing commercial tenants and the two upper floors primarily leased to artists for creative loft space. *See* Complaint, Docket No. 1, ¶ 8. Defendants Wilfred Yang and Eduardo Ho are managers and members of L For Lofts (together with L For Lofts, "Defendants"). SUF ¶ 25.

On June 8, 2021, a fire ignited at the Property that quickly engulfed and destroyed the entire building. *See* Complaint ¶ 10; *see also* Plaintiff's Request for Judicial Notice ("PRJN"), Docket No. 22-1, Ex. 3, at 36 of 54. A fire investigation report issued by the Los Angeles Fire Department

---

[1] The Court has examined in detail: (1) Plaintiff's Separate Statement of Undisputed Facts and Conclusions of Law in Support of its Motion for Summary Judgment, Docket No. 22-2; (2) Defendants' Response to Plaintiff's Statement of Genuine Disputes, Docket No. 33; and (3) Plaintiff's Response to Statement of Genuine Disputes ("SUF"), Docket No. 38. Any citation to particular paragraphs within the SUF also references all parties' statements and responses to those same paragraphs. The Court has reviewed such purported disputes raised by the parties and has included in this summary only facts that are supported by the cited evidence, altering the proffered facts if necessary to accurately reflect the uncontroverted evidence. To the extent the cited underlying "undisputed" facts have been disputed, the Court finds that the stated disputes: (1) fail to controvert the proffered "undisputed" facts; (2) dispute the facts on grounds not germane to the below statements; and/or (3) fail to cite evidence in support of the disputing party's position. As such, the Court treats such facts as undisputed. Any proffered facts not included in this ruling were found to be: (1) unsupported by admissible evidence; (2) irrelevant to the Court's present analysis; or (3) some combination thereof. The Court has also included in this summary some general background information from Century's Complaint.

("LAFD") indicated that LAFD "resources were dispatched to a major emergency structure fire in a three-story commercial building. LAFD companies extinguished the undetermined fire which originated inside Dream Imports [which occupied Units 201, 203 and 205] and spread to all the businesses within the building."[2] PRJN, Docket No. 22-1, Ex. E, at 36 of 54. After the fire, Century retained EFI Global, a firm that specializes in determining the cause and origin of fires, to investigate and prepare a cause and origin report on the source of the June 8, 2021 fire at the Property. SUF ¶ 11. EFI issued a report on February 21, 2022, which concluded that the fire originated from Unit 203 of the Property, which was one of the first-floor units L For Lofts leased to Tamur Saleem Rajput ("Rajput"), wherein Rajput operated a smoke/vape shop.[3] SUF ¶¶ 10, 12; Century's Evidence In Support of Its Motion for Summary Judgment ("MSJ Evidence"), Docket No. 22-3, Ex. 5, at 152 of 322.

Defendants have been sued in two lawsuits related to the fire (the "Underlying Actions"). SUF ¶¶ 1-2. First, L For Lofts has been sued for damages related to the fire in a lawsuit styled *Virginia Viera v. L For Lofts, LLC*, Los Angeles Superior Court Case No. 22STCV36884. SUF ¶ 1. Second, all Defendants have separately been sued for damages related to the fire in a lawsuit styled *Emily Dobbs, et al. v. L For Lofts, LLC, Wilfred Yang*, Los Angeles Superior Court Case No. 22STCV17848. SUF ¶ 2. Century agreed to defend L For Lofts in the Underlying Actions under a reservation of rights, including the right to seek reimbursement of defense costs in the

---

[2] Under Federal Rule of Evidence 201, courts may take judicial notice of facts that are "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (internal citation and quotation marks omitted). Century requested that the Court take judicial notice of the Los Angeles Fire Department Investigation Report No. 2021-06-0600. *See* Plaintiff's Request for Judicial Notice ("PRJN"), Docket No. 22-1, ¶ 5. Defendants object to this proffered evidence on the bases of untimely production and hearsay. *See* Defendants' Evidentiary Objections, Docket No. 34, Objection No. 5. The Court overrules Defendants' evidentiary objection and takes judicial notice of the publicly available fire department record. As observed in footnote 3, *supra*, Defendants do not appear to be contesting those portions of the facts delineated in the Investigation Report which they labelled as being hearsay.

[3] The record is somewhat unclear as to the name of the smoke/vape shop, though the precise business name of the smoke/vape shop is not material to the instant Motion. The parties do not dispute that Rajput was a commercial tenant who leased Units 201, 203, and 205 at the Property for the purpose of operating a smoke/vape shop. SUF ¶ 10. And the parties do not dispute that the fire originated from the space Rajput leased. *See* Opp. at 1 ("the Rajput lease for the vape shop – where the fire apparently started"). Both the Los Angles Fire Department's report and EFI's report indicate that the fire originated inside "Dream Imports." PRJN, Docket No. 22-1, Ex. 3, at 36 of 54; Ex. 5, at 152 of 322. Ostensibly, Dream Imports is the name of Rajput's smoke/vape shop. However, in the Complaint, Century refers to Rajput's smoke/vape shop as "Nelly's Wholesale, Inc." *See* Complaint ¶ 9. And Rajput's lease was for the operation of "Nelly's Wholesale, Inc." *See* MSJ Evidence, Ex. 4, at 147 of 322.

2

event it was determined there was no coverage for the Underlying Actions under the Policy. SUF ¶ 4; MSJ Evidence, Ex. 2, at 131-135 of 322; MSJ Evidence, Ex. 3, at 137-141 of 322.

On July 28, 2023, Century filed the instant action in this Court against Defendants seeking declaratory relief that it has no duty to defend or indemnify Defendants for claims related to the fire and for reimbursement of any payments Century makes in defense of such claims under its reservation of rights. *See generally* Complaint. Specifically, Century alleges that L For Lofts did not comply with conditions precedent of coverage explicitly set forth in the Policy because: (1) it did not obtain a valid certificate of commercial general liability insurance from Rajput, one of its commercial tenants; and (2) it was not identified as an insured or additional insured on Rajput's insurance policy. *See generally* Complaint; SUF ¶ 13.

The Policy stated in relevant part: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." SUF ¶ 19. Additionally, the Policy included the following endorsement, which is central to the instant action (hereinafter, the "Conditional Coverage Endorsement"):

> **Non-Residential Tenants**
>
> As a condition of coverage, with respect to any of your premises that is leased or occupied by non-residential tenants:
>
> a. You must obtain a valid certificate (or certificates) of insurance from the non-residential tenant, at the time of the inception of the lease, that evidences Commercial General Liability Coverage ("occurrence" form), for ongoing operations for the location occupied by the non-residential tenant; and
>
> b. You must obtain a new valid certificate (or certificates) of insurance upon the renewal or replacement of the non-residential tenant's current insurance policy; and
>
> c. You must provide the certificate(s) of insurance to us upon our request; and
>
> d. The insurance shown on the certificate(s) of insurance must be written with an insurance company rated A- or better by A.M. Best at the time of certificate issuance; and
>
> e. The limits on the certificate must be equal to or greater than $1,000,000 Each Occurrence Limit and $2,000,000 General Aggregate Limit (Other than Products- Completed Operations); and
>
> f. You must be identified as an insured or an additional insured on the non-residential tenant's policy or policies; and

  g. You must obtain from the non-residential tenant, a hold-harmless agreement that indemnifies you for liability arising out of the non-residential tenant's acts, omissions, or operations.

All other terms and conditions of this policy remain unchanged.

SUF ¶ 21. In both of its reservation of rights letters, Century specifically observed the Conditional Coverage Endorsement and explicitly reserved its right to deny coverage for failure to comply with its requirements. MSJ Evidence, Ex. 2, at 134 of 322; MSJ Evidence, Ex. 3, at 140 of 322. During discovery, Defendants admitted in verified responses to Century's requests for admissions that L For Lofts: (1) did not obtain a valid certificate of insurance from Rajput; and (2) was not identified as an insured or additional insured on Rajput's insurance policy. SUF ¶¶ 14, 24. Indeed, there is no record evidence that Rajput carried any commercial general liability insurance at all during the pendency of the Policy. *See* Docket Nos. 46 at 2, 48 at 4.

  The Court issued a tentative ruling on the instant Motion on September 27, 2024 and heard oral argument on September 30, 2024. At the hearing, both parties presented oral argument that went well beyond the positions taken in their briefs and cited to purported facts which were not included in their statements of undisputed and disputed facts.[4] The Court therefore ordered the parties to file supplementary briefs addressing various issues. *See* Docket No. 46, 48, 50, 51, 52, 53. The Court took the Motion under submission and has since considered the supplemental briefs.

## II. <u>Legal Standard</u>

  Summary judgment is proper when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To satisfy its burden at summary judgment, the moving party must establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, "the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit

---

[4] For instance, both parties indicated and subsequently confirmed in their supplemental briefs that Century paid $4.6 million under the property insurance portion of the Policy for the fire damage and did not contest that claim. However, there is no record evidence of this fact, so the Court does not rely upon it. Indeed, because Century challenges coverage only under the commercial general liability insurance portion of the Policy, there is no reason to rely upon it, other than for clarification that the Policy contained both property insurance and general liability insurance components.

  It was also argued at the hearing for the first time that the Policy was actually a renewal policy. However, there is no record evidence substantiating when L for Lofts was first insured by Century or whether any previous policies contained the Conditional Coverage Endorsement. *See* Docket Nos. 46 at 2-3, 48 at 4-5. As such, the Court does not consider this argument.

or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Nat'l Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997). And "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798-99 (9th Cir. 2010). A court must determine whether a "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**III.    Evidentiary Issues**

The Court will first address various evidentiary issues before analyzing the merits of the Motion.

**A. Exclusion of All Evidence**

Defendants argue that all the evidence Century submitted with its Motion should be excluded under Rule 37(c)(1) because Century did not make its discovery production before the close of discovery on May 17, 2024. *See* Opp. at 14. It is undisputed that Century did not produce its documents until August 8, 2024, almost three months after the discovery deadline and *after* filing the instant Motion. *See* Docket No. 24. Century's counsel attests that its law firm inadvertently failed to produce the documents. *See id.* at 2. Defendants notified Century of this oversight on August 7, 2024, nearly three months after the date for initial disclosures and twelve days after Century filed the instant Motion. *See id.* Century produced its discovery disclosures that same day and the parties thereafter jointly stipulated to a thirty-day continuance of the hearing

5

on the Motion to provide Defendants time to review the production. *See id.* Nonetheless, Defendants contend that this extension does not cure Century's initial failure to disclose the documents before the discovery cutoff date. *See* Opp. at 15.

Federal Rule of Civil Procedure 37 "gives teeth" to Rule 26 by forbidding a party who fails to provide the information required under Rule 26(a) from using that evidence "on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless," in addition to authorizing courts to impose other forms of sanctions. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."). "Rule 37(c)(1) is a self-executing, automatic sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (internal quotation marks omitted); *see also Yeti by Molly*, 259 F.3d at 1106 (citing Fed. R. Civ. P. 37 advisory committee's note (1993)).

The burden is on the party facing the sanction to show that the failure to disclose is substantially justified or harmless. *Yeti by Molly*, 259 F.3d at 1107. "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x. 705, 713 (9th Cir. 2010) (unpublished). Whether to issue sanctions under Rule 37(c)(1) is within the discretion of the district court, to which the Ninth Circuit gives "particularly wide latitude." *Yeti by Molly*, 259 F.3d at 1107.

Here, the parties do not dispute that Century failed to timely produce its discovery disclosure. Century therefore carries the burden of establishing that its discovery violation was substantially justified or harmless. *Id.* The Court would find that the inadvertent failure to produce the documents was harmless. When the parties jointly stipulated to continue the hearing on the instant Motion, they explicitly agreed "that no prejudice will inure to either as the result of a continuance of the August 29, 2024 hearing date," "that the Motion for Summary Judgment will serve judicial economy," and that they "desire that the Motion for Summary Judgment go forward and be decided on the merits." *See* Docket No. 24. Defendants' contention that they are irreparably prejudiced by the late production is unavailing because it directly contradicts the

6

position they took when the parties stipulated to an extension of time to review the production and to move forward with the Motion.

In any event, there is no dispute that the late production was inadvertent and not the product of bad faith. There is also no disruption to the trial schedule. Moreover, the Court finds that there was no substantial prejudice or surprise to Defendants because the material evidence (the Policy, the Conditional Coverage Endorsement, and the Underlying Actions) were Defendants' own documents. Indeed, the Conditional Coverage Endorsement, which by any measure is the most critical piece of evidence for the instant Motion, was attached to Century's complaint. *See* Complaint, Ex. A, Docket No. 1-1, at 4 of 4. Also, the late-produced attorney billing statements and fire investigation reports could easily be reviewed in the thirty-day continuance to which the parties stipulated. Further still, Defendants ostensibly sat by for several months without inquiring about the overlooked production. Of course, it is not Defendants' burden to produce Century's documents, but they no doubt had the opportunity to cure any prejudice by simply asking Century's counsel about the production, a finding buttressed by the fact that Century made the production on the same day it was notified of its inadvertent error. *See* Docket No. 42.

For these reasons, the Court finds that Century's late production was harmless and overrules Defendants' evidentiary objections premised on exclusion under Rule 37.

### B. Defendants' Evidentiary Objections

The Court has reviewed Defendants' Request for Evidentiary Rulings on Specified Objections, Docket No. 34, and Century's responses thereto, which were interlineated into the SUF. A court need not rule on evidentiary objections that are not material to its ruling. *Williams v. Cnty. of San Diego*, 523 F. Supp. 3d 1183, 1194 (S.D. Cal. 2021). Accordingly, the Court need not and does not reach certain of Defendants' evidentiary objections because the Court does not rely on the objected-to evidence. For the objected-to evidence upon which the Court does rely, the Court rules as follows:

| Objection | Ruling |
|---|---|
| 1 | Overruled |
| 2 | Overruled |
| 3 | Overruled |

| | |
|---|---|
| 4 | Overruled[5] |
| 5 | Overruled |
| 6 | Overruled |
| 7 | Overruled |
| 8 | Moot |
| 9 | Moot |

### IV. Discussion

The Court turns now to the merits of the Motion. Century argues that L For Lofts did not comply with requirements delineated in the Conditional Coverage Endorsement, resulting in its failure to satisfy conditions precedent to coverage under the Policy. *See generally* Motion. Accordingly, Century argues that there is no coverage under the general commercial liability portion of the Policy for the Underlying Actions, therefore entitling it to summary judgment declaring that Century has no duty to defend or indemnify Defendants and for reimbursement of the $104,086.95 it has expended in defending the Underlying Actions under a reservation of rights. *See generally id*.

**A. Duty to Defend and Indemnify**

Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity."[6] *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id*. "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Id*. However, "where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995).

Interpretation of an insurance policy is almost always a question of law. *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 288 (2014). "The interpretation of a contract,

---

[5] In its tentative ruling, the Court indicated that it would sustain Defendants' objection to Century's attorney billing statements because they were submitted in almost fully redacted form. At the hearing, the Court ordered Century to produce to Defendants and to file under seal unredacted versions of the attorney billing statements. Century timely complied. *See* Docket No. 47. As such, the Court now overrules Defendants' evidentiary objection.

[6] The parties do not dispute that California law applies.

including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence." *GGIS Ins. Servs., Inc. v. Superior Ct.*, 168 Cal. App. 4th 1493, 1507 (2008).

In addition, "[a]n insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected." *Nat'l Ins. Underwriters v. Carter*, 17 Cal. 3d 380, 386 (1976) (internal quotation marks omitted). "The fundamental rules of contract interpretation," which apply to the interpretation of an insurance policy, "are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 470 (2004) (internal quotation marks omitted); *see also* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."). "The mere fact that a word or phrase in a policy may have multiple meanings does not create an ambiguity." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999). "Rather, the meaning of the word or phrase must be considered in light of its context." *Yahoo Inc. v. Nat'l Union Fire Ins. Co. etc.*, 14 Cal. 5th 58, 69 (2022); *see also Sony Computer Ent. Am. Inc. v. Am. Home Assur. Co.*, 532 F.3d 1007, 1012 (9th Cir. 2008) ("The terms in an insurance policy must be read in context and in reference to the policy as a whole, with each clause helping to interpret the other."); Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

Here, the parties do not dispute that the Policy contained the Conditional Coverage Endorsement, which explicitly detailed numerous requirements that L For Lofts must satisfy with regard to any non-residential tenant of the Property, and that the requirements were "a condition of coverage." SUF ¶ 21. It is also undisputed that Rajput was a non-residential tenant who operated a commercial smoke/vape shop on the Property. SUF ¶ 24. In addition, it is undisputed that L For Lofts: (1) did not obtain a certificate of insurance from Rajput evidencing insurance under a commercial general liability insurance policy for his commercial operations at the Property; and (2) was not named as an insured or additional insured under any policy of insurance related to Rajput's commercial operation of the smoke/vape shop. SUF ¶ 24. Indeed, it is undisputed that no record evidence exists showing that Rajput carried any commercial general liability insurance at all for the operation of his smoke/vape shop during the pendency of the

9

Policy.  *See* Docket Nos. 46 at 2, 48 at 2.

Century contends that Defendants' admissions plainly establish that L For Lofts did not comply with the conditions delineated in the Conditional Coverage Endorsement, thereby precluding coverage under the Policy, and entitling it to summary judgment that it has no duty to defend or indemnify L For Lofts in the Underlying Actions.  *See* Motion at 2.  While Defendants do not dispute that L For Lofts failed to obtain a certificate of insurance from Rajput – and admit there is no evidence Rajput had insurance at all – they argue instead that it simply was not required to do so.  *See* Opp. at 1.  To make this argument, Defendants interpret a certain clause of the Conditional Coverage Endorsement – namely, "at the time of the inception of the lease" – as creating a strict temporal limitation that defines when, and only when, L For Lofts was obligated to obtain certificates of insurance from its commercial tenants.  *See* Opp at 3-6.

The language from the Policy upon which Defendants rely is the second clause of the first sentence of subsection (a) of the Conditional Coverage Endorsement: "You must obtain a valid certificate (or certificates) of insurance from the non-residential tenant, ***at the time of the inception of the lease***, that evidences Commercial General Liability Coverage . . . ."  SUF ¶ 24 (emphases added).  Defendants argue that Century has failed to show that Rajput's lease *incepted* during the effective period of the Policy, which it cannot establish because Rajput's lease commenced on January 1, 2021, *before* the Policy took effect on March 5, 2021.  *See* Opp. at 4.  The crux of Defendants' argument is that the Conditional Coverage Endorsement required L For Lofts to obtain a certificate of insurance *only* in two situations: (1) when a non-residential lease *incepted*; or (2) when a non-residential tenant's current policy *renewed* or was *replaced*.  *See id*.

Subsections (a) through (e) of the Conditional Coverage Endorsement each relate to the certificate of insurance.  The Court agrees that subsection (a) is susceptible to more than one interpretation.  If one were to simply remove the "at the time of the inception of the lease" clause, there would be no doubt that the obligation under subsection (a) was to obtain a valid certificate of insurance from commercial tenants evidencing commercial general liability insurance for ongoing operations by the commercial tenant.  When there is a duty to obtain certificates of insurance under the Conditional Coverage Endorsement, subsections (b) through (e) are at least clear.  Under subsection (b), L For Lofts was obligated to obtain a new certificate of insurance whenever a commercial tenant's commercial general liability insurance plan renewed or was replaced.  Under subsection (c), L For Lofts was obligated to provide evidence of these certificate

10

of insurances to Century upon Century's request. And subsection (d) and (e) delineated the specific quality and levels of the coverage that must be evidenced on the certificate of insurance.

But the "at the time of the inception of the lease" clause was purposefully drafted by Century and can be reasonably understood, as Defendants propose, as imposing a temporal limitation on L for Loft's obligation to obtain certificates of insurance only upon the inception of leases. Century proposes interpreting subsection (a) as requiring evidence of "occurrence" form commercial general liability coverage for any non-residential tenant for the entire time the lease is in effect with ongoing operations during the policy period. *See* Docket No. 46 at 4. The interpretation of the Conditional Coverage Endorsement is straightforward when the "at the time of the inception of the lease" clause is omitted. And there is no doubt that following Defendants' argument to its logical conclusion could lead to unintended results. For instance, where, as here, a commercial tenant whose lease *incepted* before the effective date of the Policy failed to carry any commercial liability insurance at all, Defendants' interpretation would *never* lead to an event trigging a duty to obtain a certificate of insurance. That is because the lease would not have *incepted*, nor would the non-existent policy have *renewed* or been *replaced*, during the effective period of the Policy.

Century argues that the "literal and conceptual context of the Conditional Coverage Endorsement is to preclude coverage if the insured allows any uninsured non-residential tenants to lease the premises." Docket No. 51 at 3. As such, Century contends, L For Lofts was independently obligated to "show proof of qualified insurance, present the certificates upon demand, have insured or additional insured status on the qualified insurance and obtain hold harmless agreements." *Id*. But the Court cannot and will not interpret the contract by completely omitting the problematic phrase, or by inserting into the endorsement words Century now wishes it had placed there when drafting it. The Court need not ponder Century's intent for the "at the time of the inception of the lease clause" because the plain meaning of the clause is susceptible to multiple interpretations, thereby precluding Century from summary judgment on this issue.

However, subsections (f) and (g) of the Conditional Coverage Endorsement do not relate to the certificate of insurance and do not impose any arguable temporal limitations. Under subsection (f), L For Lofts was obligated to be identified as an insured or an additional uninsured on Rajput's insurance policy. And subsection (g) required L For Lofts to obtain a hold-harmless agreement indemnifying it from any liability arising from Rajput's acts, omissions, or operations.

11

As Defendants concede, L For Lofts was never identified on Rajput's policy as an insured or additional insured. SUF ¶ 24. That makes sense, considering that the parties do not dispute that there is no evidence that Rajput carried any commercial general liability insurance of his smoke/vape shop at all. *See* Docket Nos. 46 at 2, 48 at 4.

Defendants argue that subsection (f) should be interpreted as a dependent condition because before Defendants can comply with the condition – *i.e.*, be additionally insured on Rajput's policy – Rajput must first obtain a general commercial liability policy, the terms and conditions of which are set forth in subsections (a)-(e). *See* Docket No. 50 at 2-3. This argument is unpersuasive. Each subsection is separated by a semicolon and the word "and," making clear that each requirement is independent of the next. While subsections (a) through (e) all relate to various conditions of the certificates, subsections (f) and (g) plainly and individually refer to additional insured status and hold harmless agreements, respectively. The Court thus finds that Century is entitled to summary judgment because there is no material dispute that L For Lofts was never listed as an additional insured on any commercial generally liability policy carried by Rajput, thereby failing to satisfy an explicitly delineated condition of coverage in the Conditional Coverage Endorsement.

At bottom, the Conditional Coverage Endorsement Century appears to be an imperfectly drafted modification of a type of a conditional endorsement commonly found in contractor/sub-contractor agreements. This type of endorsement is far from novel. In *Scottsdale Ins. Co. v. Essex Ins. Co.*, the California Court of Appeal enforced an endorsement nearly identical to the instant Conditional Coverage Endorsement. 98 Cal. App. 4th 86, 98 (2002). Among other things, the endorsement in *Scottsdale* provided "that conditions for coverage under this policy" included: (1) "Certificates of insurance with limits of liability equal to or greater than those provided by this policy will be obtained from all subcontractors prior to commencement of any work performed for the insured"; and (2) "Insured will be named as additional insured on all subcontractors general liability policies." *Id*. at 94. The court interpreted the endorsement not as eliminating the insurance company's obligations but instead as requiring the insured to guarantee its subcontractors obtained other insurance "to help cover the risk." *Id*. at 96.

The same is true here. In the Underlying Actions, L For Lofts has been sued for what appears to be a catastrophic fire at the Property originating from Rajput's smoke/vape shop. The Conditional Coverage Endorsement required – as a condition of coverage – that L For Lofts obtain

(upon unclear triggering events) certificates of insurance evidencing valid general liability insurance from its commercial tenants *and* be listed as an additional insured on those policies. Similar to the purpose of the endorsement in *Scottsdale*, both parties here agree that the purpose of the Conditional Coverage Endorsement was to lessen Century's enhanced risk of insuring a property leased to commercial tenants, by warranting that additional insurance was in place for commercial tenants and that Century had rights to contribution.  *See* Opp. at 10-11.

Defendants argue, however, that the Conditional Coverage Endorsement should only apply in circumstances where Century's risk was in fact increased, which cannot be established here because the precise *cause* of the fire (not just the originating *location* of the fire) is undetermined. *See id*. at 10-13.  As Defendants see it, if L For Lofts is determined to be individually liable for damages arising from the fire (for example, the fire was caused by L For Loft's faulty wiring that happened to start in the smoke/vape shop's unit), then Century's risk from an uninsured commercial tenant would be irrelevant, as the enhanced risk of the uninsured commercial tenant did not cause the fire.  *See id*. at 12-13.

This argument is similarly unpersuasive.  Most importantly, the plain language of the Conditional Coverage Endorsement does not contain any conditional language qualifying application of the endorsement upon a finding of liability.  Relatedly, the language of the endorsement invariably reveals that it is a condition to, rather than an exclusion from, coverage under the Policy.  In an insurance policy, "[a] condition precedent refers to an act, condition or event that must occur before the insurance contract becomes effective or binding on the parties . . . .  In general, conditions neither confer nor exclude coverage for a particular risk but, rather, impose certain duties on the insured in order to obtain the coverage provided by the policy." *N. Am. Capacity Ins. Co. v. Claremont Liab. Ins. Co.,* 177 Cal. App. 4th 272, 289-90 (2009) (internal citations and quotation marks omitted).  The Policy provided that certain "provisions in this policy restrict coverage" and admonished L For Lofts to "[r]ead the entire policy carefully to determine rights, duties and what is and is not covered."  SUF ¶ 19.  Thus, the Conditional Coverage Endorsement was a condition precedent that merely imposed certain duties upon L For Lofts in order to obtain coverage under the Policy, without limitation on the precise cause of future liability.[7]

---

[7] The Court rejects Defendants' argument that the condition was a condition subsequent.  *See* Opp. at 9-10.  This

At bottom, the Conditional Coverage Endorsement is reasonably understood to condition coverage upon delineated assurances that sufficient additional insurance was in place during the duration of time that the Property was used by commercial tenants, given the increased risk of such use. Defendants' own admissions establish that L For Lofts did not obtain a valid certificate of insurance from Rajput evidencing commercial general liability insurance for his smoke/vape shop, nor was it listed as an insured or an additional insured under Rajput's policy. Though factual disputes exist as to the meaning of "at the inception of the lease," there is no factual dispute as the requirement that L For Lofts must be listed as an additional insured on Rajput's policy. Because the Conditional Coverage Endorsement was "a condition of coverage," it was a condition precedent coverage under the Policy. And because L For Lofts did not satisfy this condition precedent by complying with the terms of the Conditional Coverage Endorsement, the Policy does not give rise to a legal duty to defend the Defendants in, or indemnify them for, the Underlying Action.

### B. Conspicuous Placement of the Conditional Coverage Endorsement

Defendants next argue that the Conditional Coverage Endorsement is not enforceable because it was not conspicuously placed in the Policy. *See* Opp. at 8-9. Specifically, Defendants contend that the Conditional Coverage Endorsement was not conspicuously listed on the declarations page in bold, underlined, or large font and was "sandwiched between 10 other endorsements" on page 45 of the Policy. *See id*. Century observes that Defendants do not take exception with the Conditional Coverage Endorsement itself, but instead claim without authority that it was not conspicuously listed on the declarations page and placed on page 45 of the Policy. *See* Reply at 5.

"Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails." *Haynes v. Farmers Ins. Exch.*, 32 Cal. 4th 1198, 1204 (2004). However, "to be enforceable, any provision that takes away or

---

argument is inextricably premised upon Defendants' interpretation of the Conditional Coverage Endorsement's temporal requirements. Certainly with respect to subsection (f), there is no even arguable temporal requirement and the Conditional Coverage Endorsement makes clear that it is a "condition of coverage."

The Court also rejects Defendants' similar argument that the Conditional Coverage Endorsement is ambiguous because it interchangeably uses the term "tenants" and "tenant." *See* Opp. at 7-8. These terms plainly mean nothing other than their obvious understanding: if the Property is leased or occupied by a non-residential *tenant(s)*, the Policy required L For Lofts to obtain a certificate of insurance from the non-residential *tenant(s)*.

limits coverage reasonably expected by an insured must be conspicuous, plain and clear." *Id.* (internal quotation marks omitted). The conspicuousness of an exclusionary endorsement "refers to how a coverage-limiting provision actually has been positioned and printed within the policy at issue." *Id.* at 1209. "Some relevant considerations include the location of where the exclusion appears in the policy, the exclusion's relation to the density of the entire policy and whether the exclusion appears in any table of contents." *Northfield Ins. Co. v. Sandy's Place*, LLC, 530 F. Supp. 3d 952, 964 (E.D. Cal. 2021). Accordingly, "any such limitation must be placed and printed so that it will attract the reader's attention . . . [and] must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson." *Haynes*, 32 Cal. 4th at 1204. The insurer carries the burden of establishing that any such coverage exception is conspicuous, plain, and clear. *Id.*

Here, the Court finds that Century has carried its burden of establishing that the Conditional Coverage Endorsement was conspicuously listed. The Conditional Coverage Endorsement is listed by name in a table of contents on the third page of the Policy under the heading "Forms Applicable to this Coverage." *See* MSJ Evidence, Ex. 1, at 6 of 322. Furthermore, there is no dispute that the Policy stated: "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." SUF ¶ 19. In addition, Defendants do not raise any objection to the actual endorsement itself. To the extent Defendants take issue with the fact that the Conditional Coverage Endorsement was "sandwiched" between other endorsements, it is unclear how a list of policy terms and endorsements is otherwise supposed to work or be positioned. To the extent Defendants take issue with the fact that the Conditional Coverage Endorsement was on page 45 of the policy, they have cited no authority that establishes the order in which certain endorsements must be placed within an insurance policy. The Court observes, too, that the entire Policy is 126 pages long, meaning the Conditional Coverage Endorsement was placed relatively early in the Policy considering the overall density of the document. In addition, the placement of the Conditional Coverage Endorsement seems orderly, considering that it was placed with other conditional or exclusionary endorsements immediately preceding the commercial general liability coverage form.

For all of the foregoing reasons, the Court **GRANTS** Century's Motion for Summary Judgment with respect to its claim for declaratory relief that it has no duty to defend or indemnify Defendants in/for the Underlying Actions.

### C. Reimbursement of Defense Costs

Under California law, an insurance company "having reserved its right to do so, may obtain reimbursement of defense costs which, in hindsight, it never owed." *Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 657 (2005). To arrive at this conclusion requires a restatement of some general insurance law principles. An insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (emphasis in original) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966)). "The duty to defend is broader than the duty to indemnify, and it may apply even in an action where no damages are ultimately awarded." *MV Transportation*, 36 Cal. 4th at 654. However, "in an action wherein none of the claims is even potentially covered because it does not even possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence, the insurer does not have a duty to defend." *Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 59 (1997) (internal citation and quotation marks omitted). This is grounded in contract law principles: "It rests on the fact that the insurer has not been paid premiums by the insured for a defense. . . . The insurer has not contracted to pay defense costs for claims that are not even potentially covered." *Id*.

"These principles are equally true where, as here, the insurer does not deny a defense at the outset, but instead elects to provide one under a reservation of its right to reimbursement. By law applied in hindsight, courts can determine that no potential for coverage, and thus no duty to defend, ever existed." *MV Transportation*, 36 Cal. 4th at 658. In such cases, "the insurer, having reserved its right, may recover from its insured the costs it expended to provide a defense which, under its contract of insurance, it was never obliged to furnish." *Id*. "Because the right is the insurer's alone, it may be reserved by it unilaterally." *Buss v. Superior Ct.*, 16 Cal. 4th 35, 61 n.27 (1997). The policy justification for this conclusion is that an insurer facing unsettled coverage disputes should not be forced to choose between denying a defense at risk of a bad faith suit and providing a defense it does not owe with no recourse for reimbursement. *Id*. at 660. The burden of proof for an insurer seeking to recover defense costs from an insured is a preponderance of the evidence. *Buss*, 16 Cal. 4th at 53.

Here, Defendants do not contest or in any way address in their opposition the propriety of Century seeking reimbursement for its defense costs in the Underlying Action, except, of course, from arguing that coverage exists under the Policy. In addition, the parties do not dispute that

16

Century has provided a defense in both of the Underlying Actions under a reservation of rights, which explicitly included the right to seek reimbursement of defense costs in the event it was determined there was no coverage under the Policy for the Underlying Actions. SUF ¶ 4. Century has filed a declaration from a Senior Claims Adjuster at Legal for Meadowbrook, Inc, the company assigned to handle the claims associated with the Underlying Actions, who attests that Century has incurred $104,086.95 in defense costs. *See* Declaration of Aaron Falvo, Docket No. 22-6, ¶ 11.

Century initially submitted heavily redacted copies of the attorney billing statements that purport to substantiate that total. MSJ Evidence, Ex. 8, at 243-322 of 322. Defendants raised evidentiary objections to the attorney billing statements on the grounds that all descriptions of the work performed are redacted, precluding Defendants' ability to determine whether the services provided were reasonable, and that they are authenticated by a claims adjuster, not an attorney who actually performed the work. *See* Docket No. 34. However, as noted earlier, Defendants did not raise any substantive argument in opposition to Century recovering its reimbursable defense costs – including the procedure used to determine how much to award in reimbursement.

On the evidentiary issue, the Court initially agreed with Defendants that the attorney billing statements were not admissible for purposes of the instant Motion because they were so heavily redacted that all descriptions of the work performed was omitted, they were not authenticated by any person at the law firm that prepared the statements, and it was unclear how the amounts added up to the requested $104,086.95. The Court ordered Century to file under seal and to disclose to Defendants unredacted versions of the attorney billing statements that are authenticated by an attorney who performed the work and substantiate the requested amount. *See* Docket No. 47. Century timely filed unredacted versions of the billing statements that add up to the requested $104,086.95 (Docket No. 47), an additional Declaration from Aaron Falvo providing copies of checks issued to defense counsel totaling $114,835.32 (Docket No. 46-1), and a declaration from Robert K. Shawhan II, counsel for L For Lofts in the Underlying Actions, attesting that Century has paid his firm $114,835.32 for legal fees and expenses (Docket No. 46-2). The Court has reviewed this additional evidence and is satisfied that the requested $104,086.95 has been sufficiently justified.

On the legal issue, the Court agrees that the nature of the relief sought is equitable reimbursement of advanced defense costs, as compared to a fee-shifting award made on a special motion for attorney fees, such that determination of appropriate relief is not subject to the typical

17

lodestar and reasonableness calculations deployed in calculating a fees-shifting award. *See Northfield Ins.*, 530 F. Supp. 3d at 970; *Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000, 1009 (C.D. Cal. 2021). As such, the submitted declarations and attorney billing statements are sufficient to satisfy Century's burden of establishing reimbursable defense costs by a preponderance of the evidence.

For the foregoing reasons, the Court **GRANTS** Century's Motion for Summary Judgment with respect to its claim for $104,086.95 in reimbursement for advanced defense costs in the Underlying Actions.

### V.     Conclusion

Based on the foregoing discussion, the Court **GRANTS** Century's Motion for Summary Judgment. Within two business days of the date of this order, Century shall file a proposed final judgment consistent with the decision herein and the prior rulings of the Court.